IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jimmy D. Meggs, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 8:10-cv-1774-TLW-JDA |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Knowlin, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 19.]  Petitioner is a state prisoner in the custody of the South Carolina Department of Corrections ("SCDC") who seeks relief pursuant to Title 28, United States Code, Section 2254.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on July 8, 2010.  [Doc. 1.] Petitioner also submitted a document entitled "Brief of Petitioner" on September 10, 2010. [Doc. 11.]  On November 19, 2010, Respondent moved for summary judgment.  [Doc. 19.] On February 3, 2011, Petitioner filed a response in opposition to Respondent's motion for summary judgment.  [Doc. 35.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner was indicted in April 2001 for two counts of engaging a child for sexual performance and two counts of contributing to the delinquency of a minor. [Supp. App. 1–8.][1]  After a four day trial in August 2001, where he was represented by Kernard E. Redmond ("Redmond") and James Cox ("Cox") [App. 1], Petitioner was found guilty as indicted [App. 667].  Petitioner received a sentence of three years for each charge of contributing to the delinquency of a minor and twenty years for one charge of engaging a child for sexual performance, to run concurrently.  [App. 675–77.]  For the second charge of engaging a child for sexual performance, Petitioner received a sentence of twenty years, consecutive, which the judge suspended to five years probation.  [App. 676.]

**Evaluation by Dr. Narayan**

After Petitioner's trial, in the face of other charges against Petitioner, Redmond moved for an order requiring Petitioner to submit to a psychiatric examination.  [*See* Supp. App. 33.]  The motion was granted [Supp. App. 33–35], and in May 2002, Petitioner underwent a psychiatric evaluation under the supervision of Dr. Pratap Narayan [Supp. App. 24].  The written evaluation [Supp. App. 24–30] indicated Dr. Narayan reviewed 31 items, including reports and interviews, over the course of the evaluation of Petitioner [Supp. App. 25–27].  Dr. Narayan concluded that Petitioner suffered from a dysthymic disorder versus adjustment disorder with mixed anxiety and depressed mood, malingering, and personality disorder.  [Supp. App. 24.]  However, Dr. Narayan also concluded

---

[1] The Appendix can be found at Docket Entries 21-1 through 21-11.  The Supplemental Appendix can be found at Docket Entry 21-12.  The Appendix and Supplemental Appendix, as well as the other documents in the State's return, are sealed because they contain the names of the victims, who were minor children, and their families.  [Docs. 20, 22.]

Petitioner was capable of understanding the nature of his charges and assisting counsel in his defense, had the ability to differentiate right from wrong at the time of the alleged offenses, and had the capacity to conform his conduct to the requirements of the law. [Supp. App. 24.]

**Direct Appeal**

Petitioner timely appealed his conviction and sentence. [Supp. App. 10; Doc. 47-1.[2]] On August 31, 2004, the South Carolina Court of Appeals affirmed Petitioner's conviction and sentence. [Supp. App. 10, 17.] The Court of Appeals denied Petitioner's petition for rehearing. [Supp. App. 18–19.] On January 6, 2006, the South Carolina Supreme Court denied Petitioner's petition for writ of certiorari and issued remittitur on January 10, 2006. [Supp. App. 20, 22.]

**First PCR Application**

Petitioner filed a first application for post-conviction relief ("PCR") on April 4, 2006.[3] [App. 680.] Petitioner filed an amended PCR application on November 28, 2007. [App. 692; Doc. 47-8.] A hearing was held before the PCR court on December 11, 2007 [App. 689–780], where Petitioner asserted his trial attorneys provided ineffective assistance because they failed to do the following: (1) investigate whether Petitioner was mentally ill at the time of the alleged offenses; (2) request a verdict of guilty but mentally ill ("GBMI");

---

[2] The Court notes that some documents in Respondent's return were added after Petitioner received a Roseboro order directing Petitioner to respond to Respondent's motion for summary judgment and after Petitioner submitted his response in opposition. [*See* Doc. 47.] However, the majority of these documents were referenced in Respondent's return and memorandum in support of his motion for summary judgment, and these documents do not affect the Court's recommendation. Therefore, the Court makes its recommendation without an additional response to these documents from Petitioner.

[3] Petitioner was represented throughout the proceedings on his first PCR application.

(3) move for a direct verdict based on the failure of the State to prove an essential element of the crime, a sexual performance within the meaning of the statute; and (4) request a charge on a lesser included offense [App. 692–93].

On March 4, 2008, the PCR court filed an order dismissing Petitioner's PCR application with prejudice. [App. 793–809.] The court found that Petitioner's trial attorneys were not ineffective for failing to investigate Petitioner's mental health because Petitioner "assisted in his defense, communicated effectively with trial counsel, and never exhibited any behavior to alert trial counsel that mental health issues might be present." [App. 805.] Further, the court found that there was no basis for trial counsel to pursue a GBMI defense because Petitioner consistently denied the allegations and never gave any indication that he was suffering from a mental illness.[4]  [App. 805–06.]

Moreover, the PCR court discredited the testimony of Dr. Thomas Martin [App. 805], a forensic psychiatrist who testified at the PCR hearing [App. 714–42] and concluded that at the time of the alleged offenses, Petitioner lacked the capacity to conform his conduct to the requirements of the law [App. 724–25, 789–90].   To evaluate Petitioner's competency to stand trial and capacity to conform his conduct to the requirements of the law, Dr. Martin met with Petitioner in August 2006 and November 2007, reviewed Petitioner's SCDC records and arrest warrants, and talked with Petitioner's family.  [App. 718–19, 787.]  The PCR court discredited Dr. Martin's testimony and report because Dr. Martin (1) evaluated Petitioner several years after the alleged offenses; (2) relied on less information than Dr. Narayan relied on in evaluating Petitioner; (3) relied on information

_____

[4] The court also stated that Petitioner was "simply unhappy with the verdict and is now seeking a new trial in the hopes that a new defense might bring a different result."  [App. 806.]

4

from Petitioner's family regarding Petitioner's behavior prior to Petitioner's incarceration; (4) conceded that it can be difficult to perform a retrospective evaluation; and (5) testified that he has often seen patients decompensate after incarceration.  [App. 805.]

Additionally, the court found Petitioner's attorneys were not ineffective for failing to request a directed verdict based on the State's lack of proof of the element of "performance" in engaging a child for sexual performance.  [App. 806.]  The court noted that the statute does not specify how many persons are required for an "audience," Redmond and Cox believed that Petitioner alone could qualify as an audience, and Redmond and Cox believed other boys witnessed the activities and would therefore constitute an audience—the court agreed with Redmond and Cox that the statute was not intended to be read as narrowly as Petitioner suggested.  [App. 806–07.]  The court also found that it was unlikely the trial court would have granted a directed verdict on the ground that the State had failed to carry its burden of proof.  [App. 807.]  Finally, the court found Petitioner's trial attorneys were not ineffective for failing to request a jury charge on the lesser included offense to engaging a child for sexual performance because the evidence did not show that Petitioner committed the lesser, rather than the greater, offense.[5]  [*Id.*]

---

[5] The PCR court also provided a summary of its findings on Petitioner's claims of ineffective assistance of trial counsel:

> This Court finds trial counsel were not ineffective in any respect. They represented [Petitioner] with zeal and vehemence.  Trial counsel attempted to discredit witnesses in cross-examination by pointing out possible motivations for the children to fabricate the allegations. They were able to demonstrate inconsistencies in testimony as to [Petitioner]'s relationship with one of the victim[s'] mother. They presented the testimony of several other boys who attended the paint ball campouts but did not see any improper behavior. The record reflects that trial counsels' performance was well within norms expected of criminal attorneys in this State.

[App. 808.]

Petitioner filed a motion for reconsideration [App. 810–12], which was denied on May 5, 2008 [App. 813–14].  Petitioner timely appealed and filed a petition for a writ of certiorari in the South Carolina Supreme Court on March 11, 2009.  [Doc. 47-2.]  The Supreme Court denied certiorari on March 18, 2010 [Doc. 47-4] and issued remittitur on April 5, 2010 [Doc. 47-5].

**Second PCR Application**

On April 23, 2009, Petitioner filed a second PCR application; Petitioner proceeded pro se on this application.  [Doc. 24-1.]  Petitioner raised three grounds for relief in his application: (1) the PCR transcripts were not verified, (2) the statute does not apply to the alleged crime, and (3) Petitioner is being held by an unconstitutional conviction.  [*Id.* at 3.]  In a conditional order of dismissal, the PCR court summarily dismissed Petitioner's application as successive and untimely.  [Doc. 24-3.]  Petitioner filed objections to the court's conditional order.  [Doc. 24-4.]  The court filed a final order, denying Petitioner's application.  [Doc. 47-9.]

**Petition for Original Jurisdiction**

Petitioner filed a petition for original jurisdiction in the South Carolina Supreme Court on May 29, 2009.  [Doc. 47-6.]  Petitioner asserted the following issues: (1) "Is Petitioner's sentence legally considered a violent offense according to S.C. Code Ann. § 16-1-60(A) & (B)?"; (2) "Is S.C. Code Ann. § 16-3-657 unconstitutional?"; (3) "Is S.C. Code Ann. § 24-21-250 unconstitutional?"; and (4) "Is S.C. Code Ann. § 24-21-560 section (D) double sentencing thus rendering section (D) unconstitutional?"  [*Id.* at 9, 16, 22.]  The Supreme Court denied the petition on June 25, 2009, stating "Petitioner has not alleged facts

showing that other remedies are unavailable or inadequate to address his claims for relief." [Doc. 47-7.]

**Petition for Writ of Habeas Corpus**

On July 8, 2010, Petitioner filed this Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner asserts four grounds in support of the Petition:

(1)    "trial counsel was constitutionally ineffective for not challenging the constitutionality of [S.C. Code Ann.] § 16-3-810";

(2)    "[trial] counsel was constitutionally ineffective in not making the motion for a directed verdict based on a failure to show all elements of crime";

(3)    "trial counsel was constitutionally ineffective for not determin[in]g if Petitioner was competent, criminally responsible, lacked capacity to conform"; and

(4)    "the PCR court's ruling was in error in deciding on Dr. Na[]rayan's report, when he was not at the PCR hearing to testify and ruled that Dr. Martin[']s report was not credible, after testifying, and after the court qualified him as an expert witness."

[*Id.*] Respondent filed a motion for summary judgment on November 19, 2010 [Doc. 19], which is now ripe for review.[6]

---

[6] On October 5, 2010, after he filed this Petition, Petitioner submitted a motion for declaratory judgment to the South Carolina Supreme Court. [Doc. 21-22.] He presented the following question: "Is § 16-3-810 applicable to the facts set out in Petitioners case?" [*Id.* at 5.] The Supreme Court dismissed Petitioner's motion on October 20, 2010 pursuant to *Key v. Currie*, 406 S.E.2d 356, 357 (S.C. 1991) (holding that the Supreme Court will exercise its original jurisdiction "[o]nly when there is an extraordinary reason such as a question of significant public interest or an emergency"). [Doc. 21-21.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).   Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se Petition is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

> admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's

10

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or

(B)　(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C.

12

Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[7]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he

---

[7]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

14

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### *Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a

"fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

**Procedurally Barred Ground**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996) (stating that if a potentially defaulted claim is raised in the federal proceedings, the respondent must raise procedural default as a defense when the claim is raised in the federal proceedings or lose the right to raise the defense at a later federal proceeding). If the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

Respondent argues that Ground One, ineffective assistance of trial counsel for failing to challenge the constitutionality of S.C. Code Ann. § 16-3-810, is procedurally defaulted because Petitioner first raised this issue in his motion for declaratory judgment

16

filed with the South Carolina Supreme Court in October 2010. [Doc. 21 at 21.] The Court disagrees with Respondent to the extent Respondent argues that Petitioner raised this issue in his motion for declaratory judgment because Petitioner's motion asked the South Carolina Supreme Court to consider the applicability of S.C. Code Ann. § 16-3-810 to Petitioner's case. [Doc. 21-22 at 5.] The motion did not ask the Supreme Court to determine whether Petitioner's trial counsel were ineffective nor did the motion ask the Supreme Court to determine whether § 16-3-810 is constitutional. Therefore, the Court finds that Ground One has never been presented to the South Carolina courts.

However, the Court finds Petitioner is procedurally barred from raising Ground One in a proceeding in a South Carolina court, and consequently, the Court will not consider Ground One of the Petition without a showing of cause for and prejudice resulting from the failure to raise this ground in a state proceeding.[8]  Petitioner would be barred from asserting this ground for relief in a state proceeding because Petitioner could have raised this ground at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, South Carolina bars prisoners from bringing claims if the deadlines for filing a direct appeal or PCR application have passed. S.C. App. Ct. R. 203(d)(3), 243. Therefore, Petitioner would also be barred from filing a PCR application

---

[8] The habeas doctrine of procedural default is not a jurisdictional matter but is an application of the independent and adequate state ground doctrine and "'is grounded in concerns of comity and federalism.'" *Trest v. Cain*, 522 U.S. 87, 89 (1997) (quoting *Coleman*, 501 U.S. at 730). As the Fourth Circuit has stated, "the issue of procedural default generally is an affirmative defense that the state must plead in order to press the defense thereafter." *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999). However, a federal habeas court may exercise its discretion and deny federal habeas relief on the basis of procedural default by a petitioner "in the presence of overriding interests of comity and judicial efficiency that transcend the interests of the parties.'" *Id.* In the interest of judicial economy, the Court finds that it should exercise its discretion and deny Petitioner federal habeas relief as to Ground One on the basis of procedural default, even though the Court disagrees with Respondent's argument as to why Ground One is procedurally barred.

17

regarding Ground One because the deadline for filing a PCR application has passed.  S.C. Code Ann. § 17-27-45.

Petitioner argues that his claims are not procedurally defaulted, but he does not address cause for and prejudice resulting from his default.  Petitioner contends that Respondent cannot assert procedural default as to Ground One because Respondent did not assert a procedural default defense when Petitioner filed his motion for declaratory judgment in the South Carolina Supreme Court.  [Doc. 35 at 21.]  Petitioner misconstrues the nature of the defense of procedural default.  As stated above, procedural default is an affirmative defense that respondents must raise the first time an allegedly defaulted claim is raised in *federal* court or the respondent is barred in later federal proceedings from raising procedural default as a defense.  *Gray*, 518 U.S. at 165–66.  Therefore, respondents do not have to assert procedural default as a defense in a state action in order to preserve the defense in a federal habeas action.

**Merits of Remaining Grounds**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court recently recognized, § 2254(d), as amended by AEDPA, "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 131 S. Ct. at 786.  Section 2254(d) imposes a standard that was intended to be difficult for prisoners to meet because § 2254(d) "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a

18

substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, "the question is not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788.  In *Strickland v. Washington*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. 668, 687 (1984).  To satisfy the first prong of *Strickland*, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To satisfy the second prong of *Strickland*, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas."  *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).

### Ground Two: Ineffective Assistance of Counsel for Failing to Move for Directed Verdict

Petitioner argues that his trial attorneys were ineffective for failing to move for a directed verdict after the State presented its case because the State failed to prove every

element of the crime charged.[9]  [Doc. 1.]  Specifically, Petitioner contends that the State

did not prove the element of "performance" because there was no audience present.[10]

[Doc. 35 at 1–3, 24–25.]  The PCR court found that Petitioner's trial attorneys were not

ineffective in failing to request a directed verdict on this ground because the statute does

---

[9] In its entirety, S.C. Code Ann. § 16-3-810 provides:

> (a) It is unlawful for any person to employ, authorize, or induce a child younger than eighteen years of age to engage in a sexual performance. It is unlawful for a parent or legal guardian or custodian of a child younger than eighteen years of age to consent to the participation by the child in a sexual performance.

> (b) Any person violating the provisions of subsection (a) of this section is guilty of criminal sexual conduct of the second degree and upon conviction shall be punished as provided in § 16-3-653.

Section 16-3-800 provides definitions:

> (1) "Sexual performance" means any performance or part thereof that includes sexual conduct by a child younger than eighteen years of age.

> (2) "Sexual conduct" means actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals.

> (3) "Performance" means any play, motion picture, photograph, dance, or other visual representation that is exhibited before an audience.

---

[10] The Court notes that the Petition and subsequent submissions to the Court are somewhat unclear as to Petitioner's allegations of ineffective assistance of counsel with respect to a directed verdict motion.  As a ground for relief, Petitioner alleges in his Petition that his trial attorneys were "constitutionally ineffective in not making the motion for a directed verdict based on a failure to show all elements of crime." [Doc. 1 at 7.]  In his submissions to the Court, Petitioner makes three separate arguments as to what elements the State failed to show: (1) performance [Doc. 35 at 1–3, 18–19, 24–25]; (2) sexual battery [Doc. 11 at 5–7; Doc. 35 at 7–8, 11]; and (3) child pornography materials [Doc. 1 at 7; Doc. 11 at 7–8; Doc. 35 at 8–9, 12–13, 19].  However, in his post-conviction state court proceedings, Petitioner argued that his trial attorneys provided ineffective assistance of counsel for failing to make a directed verdict motion because the State failed to prove that there was a performance [App. 692]; he did not make the other two arguments.  Therefore, the Court will address Petitioner's ineffective assistance claim to the extent that it is based on trial counsel's failure to move for a directed verdict after the State failed to prove there was a performance.  To the extent Petitioner's ineffective assistance claim is based on the State's failure to prove a sexual battery and that there were child pornography materials, the Court exercises its discretion to deny Petitioner federal habeas relief on the basis of procedural default because Petitioner failed to raise these arguments to the South Carolina courts.  *See Yeatts*, 166 F.3d at 261; *see also* S.C. Code Ann. § 17-27-90, -45; *Aice*, 409 S.E.2d at 394; S.C. App. Ct. R. 203(d)(3), 243.

not specify how many persons are required for an "audience," and Petitioner's trial counsel testified that either Petitioner alone qualified as an audience or other boys may have witnessed the activities and would qualify as an audience. [App. 806.] The PCR court agreed with trial counsel that the statute was not intended to be read as narrowly as Petitioner suggested at the PCR hearing. [App. 806–07.] Lastly, the PCR court found that it was unlikely that the trial court would have granted a directed verdict on this ground. [App. 807.]

Upon a review of the record, the Court finds that the PCR court articulated a reasonable argument that Petitioner's trial counsel satisfied the *Strickland* standard, and therefore, the PCR court's decision is not an unreasonable application of federal law. The PCR court's conclusion is supported by testimony given at the PCR hearing. Cox testified that he believed other boys witnessed the alleged "performance" and that Petitioner was an audience. [App. 747–48.] Redmond also testified that he believed other boys witnessed the events, and he also believed Petitioner alone could be considered an audience. [App. 759–60, 769–71.] Moreover, PCR counsel pointed out that there was a lack of case law interpreting the statute. [App. 770.] Therefore, the Court finds the record supports the PCR court's conclusion that Petitioner failed to show his trial counsel provided ineffective assistance by failing to move for a directed verdict, and the Court recommends that summary judgment be granted as to Ground Two.

### Ground Three: Ineffective Assistance of Counsel for Failing to Evaluate Petitioner's Competency and Capacity

Petitioner also alleges his trial attorneys provided ineffective assistance of counsel because they failed to determine whether Petitioner was competent to stand trial, criminally

responsible, and had the capacity to conform his conduct to the requirements of the law.[11] [Doc. 1 at 8.]  The PCR court gave a detailed summary of the evidence presented at the PCR hearing.  [App. 796–803.]  Also, Dr. Martin's report and Petitioner's polygraph tests were introduced as exhibits in the PCR hearing.  [App. 786–90, 792.]  The PCR court found Petitioner's trial attorneys were not ineffective for failing to investigate Petitioner's mental health because Petitioner "assisted in his defense, communicated effectively with trial counsel, and never exhibited any behavior to alert trial counsel that mental health issues might be present."  [App. 805.]  Further, the court found there was no basis for trial counsel to pursue a guilty but mentally ill ("GBMI") defense because Petitioner consistently denied the allegations against him and never gave any indication that he was suffering from a mental illness.  [App. 805–06.]  Moreover, the PCR court stated several reasons for discrediting Dr. Martin's testimony and crediting Dr. Narayan's report, including the length of time between Dr. Martin's and Dr. Narayan's evaluations of Petitioner and the alleged offenses; the amount of information each doctor relied upon in performing his evaluation; and Dr. Martin's concession that it can be difficult to perform a retrospective evaluation. [App. 804–05.]  Finally, the PCR court asserted that the "record reflects that trial counsels' performance was well within norms expected of criminal attorneys in this State."  [App. 808.]

---

[11] The Court finds that Petitioner's fourth ground for federal habeas relief, that the PCR court improperly weighed Dr. Martin's report when considering Petitioner's claim of ineffective assistance of counsel for failure to evaluate Petitioner's competency and capacity, is properly considered as part of Petitioner's third ground for relief.  Essentially, Petitioner asserts in Ground Four that the PCR court improperly determined that Petitioner's trial attorneys did not provide ineffective assistance of counsel, which is what this Court is analyzing in Ground Three.  Therefore, the Court will consider Petitioner's fourth ground as part of Ground Three, and the Court's recommendation as to Ground Three also applies as to Ground Four.

Based upon a review of the record, the Court finds that the PCR court articulated a reasonable argument for rejecting Petitioner's ineffective assistance of counsel claim, and therefore, the PCR court's decision is not an unreasonable application of federal law. The PCR court's conclusion is supported by testimony given at the PCR hearing, but trial counsel's assertion that Petitioner assisted in his own defense [App. 749–50, 753] is also supported by Petitioner's own statement in an affidavit submitted with his response in opposition to Respondent's motion for summary judgment [*see, e.g.*, Doc. 35 at 6 ("Prior to trial I informed counsel (Redmond and Cox) that I didn't believe that this statute would apply considering the allegations of the State.").] Additionally, Petitioner supports his trial attorneys' assertion that Petitioner maintained that he was not guilty. [App. 744, 749–50, 753–54; Doc. 35 at 21 ("Counsel (Mr. Redmond) was right in that I told him that I was not guilty of this offense.").] Further, Petitioner passed a polygraph test, which confirmed his trial attorneys' view that Petitioner was telling the truth about his innocence. [App. 792.] The Court finds that the record supports the PCR court's conclusion that Petitioner failed to prove the *Strickland* elements, which are necessary to establish an ineffective assistance of counsel claim. Therefore, the Court recommends that summary judgment be granted as to Ground Three.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 28, 2011
Greenville, South Carolina